# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DEMARCUS SULLIVAN, § | |
| § | Civil Action No. 4:20-CV-662 |
| Plaintiff § | Judge Mazzant |
| § | |
| v. § | |
| § | |
| SCHLUMBERGER LIMITED, § | |
| SCHLUMBERGER TECHNOLOGY § | |
| CORPORATION, and ELMOOD § | |
| STAFFING SERVICES, INC., § | |
| § | |
| Defendants § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants' Joint Motion to Exclude Coneisha Sherrod as an Expert and to Strike Her Report and Testimony (Dkt. #40). Having considered the Motion and briefing, the Court finds the Motion should be **GRANTED in part** and **DENIED in part**.

### BACKGROUND

This case arises out of an employer-employee relationship whereby Plaintiff alleges claims of disparate treatment, interference, and a hostile work environment under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Elmwood Staffing Services, Inc. ("Elmwood") is a temporary staffing agency. In October of 2017, Elmwood assigned Plaintiff to work temporarily as a materials handler at Schlumberger Technology Corporation's ("STC") maintenance facility in Denton, Texas. Throughout Plaintiff's assignment at STC, he remained an employee of Elmwood.

Plaintiff worked at STC for approximately ten months. During those months, Plaintiff claims he was subject to racial harassment and discrimination by STC employees. Plaintiff allegedly reported the harassment and discrimination to both Schlumberger's Human Resources

Department and his supervisors, but he never received a report of an investigation by the department. In September of 2018, STC informed Elwood that it had released Plaintiff from the job assignment due to issues with Plaintiff's job performance. According to Plaintiff, STC released him because he reported concerns about racial discrimination.

On February 8, 2021, Coneisha Sherrod ("Sherrod") prepared an export report on workplace harassment (Dkt. #40, Exhibit 1). On March 23, 2021, Defendants moved to exclude Sherrod as an expert and strike her report and testimony (Dkt. #40). On April 6, 2021, Plaintiff responded (Dkt. #41).

## LEGAL STANDARD

Federal Rule of Evidence 702 provides for the admission of expert testimony that assists the trier of fact to understand the evidence or to determine a fact in issue. FED. R. EVID. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court instructed courts to function as gatekeepers, and determine whether expert testimony should be presented to the jury. 509 U.S. 579, 590–93 (1993). Courts act as gatekeepers of expert testimony "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

The party offering the expert's testimony has the burden to prove that: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. A proffered expert witness is qualified to testify by virtue of his or her "knowledge, skill, experience, training, or education." FED. R. EVID. 702. Moreover, to be admissible, expert testimony must be "not only relevant but reliable." *Daubert*, 509 U.S. at 589. "This gate-keeping obligation applies to all types of expert testimony, not just scientific

testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (citing *Kuhmo*, 526 U.S. at 147).

In deciding whether to admit or exclude expert testimony, the Court should consider numerous factors. *Daubert*, 509 U.S. at 594. In *Daubert*, the Supreme Court offered the following, non-exclusive list of factors that courts may use when evaluating the reliability of expert testimony: (1) whether the expert's theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the challenged method; and (4) whether the theory or technique is generally accepted in the relevant scientific community. *Id.* at 593–94; *Pipitone*, 288 F.3d at 244. When evaluating *Daubert* challenges, courts focus "on [the experts'] principles and methodology, not on the conclusions that [the experts] generate." *Daubert*, 509 U.S. at 595.

The *Daubert* factors are not "a definitive checklist or test." *Id.* at 593. As the Supreme Court has emphasized, the *Daubert* framework is "a flexible one." *Id.* at 594. The test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Accordingly, the decision to allow or exclude experts from testifying under *Daubert* is committed to the sound discretion of the district court. *St. Martin v. Mobil Expl. & Producing U.S., Inc.*, 224 F.3d 402, 405 (5th Cir. 2000) (citations omitted).

## ANALYSIS

Defendants ask this Court to exclude Sherrod's expert report and testimony. Specifically, Defendants argue Sherrod's analysis is unreliable because she did not analyze the company's unique workplace policies before preparing her report. Without considering these policies, Defendants argue Sherrod's opinions are rooted in speculation and "nothing more than a series of legal conclusions" (Dkt. #40 at p. 9). Defendants assert this will confuse the jury.

Plaintiff contends that Sherrod's opinions are relevant and reliable. Plaintiff argues that Sherrod's analysis provides useful information about national workplace harassment policies. Plaintiff also asserts that Sherrod plans to supplement her report after the parties engage in discovery. As such, Plaintiff asks this Court to deny the Motion.

The Court previously ruled on a motion concerning Sherrod in separate case involving Defendants. *See Hernandez v. Rush Enterprises, Inc.*, 4:19-CV-638, 2021 WL 857987 (E.D. Tex. Mar. 8, 2021). In *Hernandez*, the Court largely denied Defendants' motion because it found Sherrod's expert report sufficiently reliable. In the present case, Sherrod's expert report is similar to that offered in *Hernandez*, but not identical. The Court therefore reanalyzes Sherrod's qualifications, reliability, the prior Order, and any new objections raised by Defendants.

## I.   Qualifications of Sherrod

As a threshold matter, the Court will determine whether Sherrod is qualified to testify as an expert.[1] Sherrod has been employed as a human-resources consultant since mid-2015. Further, Sherrod acted as vice president of human resources for the United Way of Tarrant County for approximately three-and-a-half years. For years before that, Sherrod worked in human resources with at least one other company. Sherrod possesses both a college and post-graduate degree. Sherrod also possesses certifications specific to human resources. Ultimately, the Court finds that Sherrod has the experience necessary to opine specifically on human-resource practices.

## II.   Reliability of the Testimony

Next, the Court will determine whether Sherrod's testimony is reliable. Defendants argue that Sherrod's testimony is inadmissible because she did not base her conclusions on the facts of the case. Specifically, Defendants contend that because Sherrod presumed all allegations in the

---

[1] Defendants do not dispute Sherrod's qualifications. However, the Court still analyzes this factor in evaluating the expert report and testimony.

complaint as true, she rooted her opinions in speculation and "there can be no question [her] opinions are patently unreliable" (Dkt. #40 at p. 6). Plaintiff argues an expert may presume facts as true without diminishing their reliability, and Sherrod intends to supplement her report as more evidence becomes available.

"[T]he law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire*, 526 U.S. at 142. When making that reliability determination, courts look to the *Daubert* factors, regardless of whether the testimony is scientific or technical. *See id.* at 147 (noting that "the basic gatekeeping obligation" found imperative in *Daubert* "applies . . . to all expert testimony"). However, the Court remains mindful that the *Daubert* framework is "flexible." *Id.* at 594. Further, the test for determining reliability can adapt to the particular circumstances underlying the testimony at issue. *Kuhmo*, 526 U.S. at 152. Sherrod works in human resources. While *Daubert* applies with equal force to scientific and non-scientific testimony, not all the factors may be relevant in a case such as the one before the Court. *See Pipitone*, 288 F.3d at 244 (citing *Kuhmo*, 526 U.S. at 147).

Sherrod does not offer a scientific opinion that would lend itself to testing. Sherrod does, however, utilize her knowledge and experience to reach conclusions. Sherrod also offers insight into three protocols that would, allegedly, have prevented Plaintiff's injuries. Sherrod arrives at these protocols by analyzing recognizable and reliable sources of information regarding human resource expectations. Sherrod also offers information on how the rules could, and arguably should, be applied in the workplace setting. Sherrod relies on professional sources—including the Equal Employment Opportunity Commission and the Code of Federal Regulations—to formulate her opinions. Applying her opinion of how employers should operate a safe workplace, Sherrod concludes that Defendants did not comply with the protocols, and this resulted in damages to

Plaintiff.

Ultimately, the Court finds Sherrod's testimony is reliable. While Sherrod concludes Defendants injured Plaintiff without evaluating Defendants' actual workplace policies, whether Sherrod is a reliable expert is better addressed through subsequent motions or at trial. For example, if Sherrod does not supplement her report after discovery, Defendants could move to exclude her through a subsequent motion to strike. Alternatively, if Sherrod does not supplement her report after discovery, her testimony will be ripe for cross examination. Her opinions about a workplace policy that she never reviewed may not persuade a jury regarding Defendants' culpability. In the meantime, Sherrod's methodology is sound and her opinions reasonable based on the evidence currently available.

Because the Court does not find Sherrod's expert report unreliable under *Daubert*, and Defendants' concerns are easily addressed through a subsequent motion, motion in limine, or cross examination, the Court declines to strike her report entirely. The Court will therefore continue its analysis and consider objections to specific components of Sherrod's report.

### III. Statistics in the Report

Defendants argue that Sherrod's internet statistics about bullying and workplace retaliation are irrelevant because Sherrod "makes no effort to relate her online statistics or articles to the evidence or facts of this case" (Dkt. #40 at p. 8). Plaintiff argues these statistics are relevant to the fundamental importance of harassment policies and whether Defendants intentionally or recklessly ignored the national problem.

Federal Rule of Evidence 401 states "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. While the Court is persuaded that the

first element is met the same cannot be said for the second.[2]

The Court is persuaded that Sherrod does not link the present case and the nationwide statistics as to make the statistics admissible. Nor does Sherrod explain the relevance between the statistics and the present action. Without any indication as to why the National Safety Council or workplace bullying is relevant in the present action, the Court sees no reason to admit the testimony. More pointedly, the statistics would not assist the factfinder in deciding the case. Thus, the Court finds Sherrod may not testify as to the national statistics.

## IV. Legal Conclusions in the Report

Defendants contend that Sherrod makes impermissible legal conclusions in her expert report. Defendants argue that Sherrod may not conclude that Defendants' failure to "enforce the law" is the "root cause" of Plaintiff's injuries (Dkt. #40 at p. 10). Defendants also argue that Sherrod may not opine about the "three safety protocols" because they are mere restatements of the law (Dkt. #40 at p. 11). Plaintiff concedes that Sherrod may not draw legal conclusions, but argues general background is necessary to analyze whether a workplace harassment policy is effective.

"Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a function of the Court." *Little v. Tech Specialty Products, LLC*, 940 F. Supp. 2d 460, 467–68 (E.D. Tex. 2013). The applicable law will be given to the jurors by the "spokesman of the law"—the judge—when the appropriate time comes. *See Askanase v. Fatjo*, 130 F.3d 657, 673 (5th Cir. 1997).

The Court considers each objection in turn. First, the Court finds that Sherrod may not testify about an employer's legal duty to monitor the workplace and to keep records. In her report,

---

[2] The Court notes that "the relevance bar pursuant to Federal Rule of Evidence 401 is low." *Coates v. EC&R Dev., L.L.C.*, No. SA-13-CV-255-DAE, 2015 WL 8362996, at *2 (W.D. Tex. Dec. 8, 2015).

Sherrod cites the Code of Federal Regulations several times to explain the legal background underpinning an employer's workplace safety obligations. However, Sherrod is not a lawyer. Her expertise is in the human-resources field, not the legal field. This testimony is not relevant or helpful to the jury, as the Court will provide the jury with any law needed to reach its verdict. While Sherrod may interpret Defendants' policies and actions, she may not make blanket statements about what the law actually says. As such, these sections are stricken, and Sherrod may not testify about them at trial.

Second, the Court finds that Sherrod may not testify that Defendants' failure "to enforce the law" is the "root cause" of Plaintiff's injuries. This is consistent with the Court's prior holding in *Hernandez*, where the Court struck the clauses "the enforcement of the laws" and "to enforce the law" from Sherrod's expert report because it constituted a legal conclusion. Plaintiff acknowledges this holding and agrees to abide by this limitation. As Plaintiff concedes the issue, these clauses are stricken, and Sherrod may not testify to this legal conclusion at trial.

Lastly, the Court finds that Sherrod may testify about common job safety protocols, but may not testify about protections legally guaranteed in the workplace. Sherrod's three job safety protocols read:

> **The first job safety protocol is:** We have the right to expect that corporations must supervise managers to enforce the law.
> **The second job safety protocol is**: We have the right to expect that corporations must prevent discrimination and retaliation in the workplace.
> **The third job safety protocol is**: We have the right to expect that corporations must care about workplace laws and safety to protect us from damages.

(Dkt. #40, Exhibit 1). Sherrod further notes that "these rules are accurate because they are supported by [several statutes, regulations, and common law]" (Dkt. #40, Exhibit 1). While Sherrod may testify about industry standards in the human resources field, she is not qualified to testify about the legal rights of employees. As presently phrased, the protocols suggest employees

8

have the legal rights to expect protections by their employer. The protocols also suggest that the law requires corporations to supervise managers. These legal conclusions are outside the scope of Sherrod's expertise. Determining whether Defendants violated the law is the province of the jury and the Court. To testify on these safety protocols, Sherrod must reframe them as industry norms that she expects a reputable employer to follow. As such, the legal implication of these protocols is stricken, and Sherrod may not testify about it at trial.

## CONCLUSION

It is therefore **ORDERED** that Defendants' Joint Motion to Exclude Coneisha Sherrod as an Expert and to Strike Her Report and Testimony (Dkt. #40) is **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Sherrod will not be able to testify as to the nationwide statistics outlined in her report. Further, Sherrod may not testify as to the law—namely, she may not intertwine the law with her factual assertions as outlined in this Order.

**SIGNED this 20th day of April, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE