# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DEMARCUS SULLIVAN, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:20-CV-00662 |
| | § | Judge Mazzant |
| | § | |
| SCHLUMBERGER LIMITED, | § | |
| SCHLUMBERGER TECHNOLOGY | § | |
| CORPORATION, and ELWOOD | § | |
| STAFFING SERVICES, INC., | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff's Motion to Compel Written Discovery (Dkt. #50). Having considered the motion and the relevant pleadings, the Court finds that Plaintiff's motion should be granted in part and denied in part.

### BACKGROUND

This case arises out of an employer-employee relationship whereby DeMarcus Sullivan ("Sullivan") alleges claims of disparate treatment, interference, and a hostile work environment under the Civil Rights Act of 1866, 42 U.S.C. § 1981. To better understand the nature of the claims, the Court will briefly outline the pertinent facts.

Elwood Staffing Services, Inc. ("Elwood") is a temporary staffing agency. In October of 2017, Elwood assigned Sullivan to work temporarily as a materials handler at Schlumberger Technology Corporation's ("STC") maintenance facility in Denton, Texas. Throughout Sullivan's assignment at STC, he remained an employee of Elwood.

Sullivan worked at STC for approximately ten months. During those months, Sullivan claims he was subject to racial harassment and discrimination by STC employees. Sullivan allegedly reported the harassment and discrimination to both Schlumberger's Human Resources Department and his supervisors, but he never received a report of an investigation by the department. In September of 2018, STC informed Elwood that it had released Sullivan from the job assignment due to issues with Sullivan's job performance. According to Sullivan, STC released him because he reported concerns about racial discrimination.

On July 9, 2021, Sullivan filed the present motion (Dkt. #50). On July 20, 2021, Elwood filed a response (Dkt. #66). Also on July 20, 2021, Schlumberger Limited and STC (collectively, "Schlumberger") filed a response (Dkt. #67). On July 26, 2021, Sullivan filed a reply (Dkt. #76).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any non[-]privileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." FED. R. CIV. P. 26(b)(1). The Court's scheduling order requires that the parties produce, as part of their initial disclosure, "documents containing, information 'relevant to the claim or defense of any party.'" (Dkt. #21 at p. 4). Moreover, the Local Rules of the Eastern District of Texas provide further guidance suggesting that information is "relevant to any party's claim or defense [if]: (1) it includes information that would not support the disclosing parties' contentions; . . . (4) it is information that deserves to be considered in the preparation, evaluation or trial of a claim or defense. . . ." LOCAL RULE CV-26(d). It is well established that "control of discovery is committed to the sound discretion of the trial court." *Freeman v. United States*, 556

F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1). The moving party bears the burden of showing that the materials and information sought are discoverable. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006). Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things. Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B). "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection." FED. R. CIV. P. 34(b)(2)(C). On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest." FED. R. CIV. P. 34(b)(2)(C).

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a non-frivolous argument for changing the law. FED. R. CIV. P. 26(g). This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery. FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes. FED. R. CIV. P. 26(b)(1), advisory committee note (2015). This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue. *Id.* For example, a party requesting discovery may have little information about the burden or expense of responding. *Id.* "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information—with respect to that part of the determination." *Id.*

## ANALYSIS

Sullivan outlines two categories of written discovery over which the parties have significant disagreement: interrogatories and requests for production. Regarding Sullivan's interrogatories, Sullivan asks the Court to compel Schlumberger to: (1) identify the employees who worked at the Denton facility during Sullivan's employment at the facility; and (2) provide Sullivan with STC's net worth. Regarding Sullivan's requests for production, Sullivan seeks: (1) documents related to integrated enterprise issues; (2) documents related to human resource training material; (3) the personnel file of the comparator; and (4) the Risk Identification Reports.

Elwood responds that it "is not withholding any personnel-related documents for [Jamie] Ferriman [('Ferriman')]" (Dkt. #66 at p. 1). Schlumberger contends that Sullivan's motion should be denied on at least one of the following bases: (1) the requested discovery is not proportional to the needs of the case considering the claimed damages; (2) the requested discovery is entirely cumulative and duplicative of responsive documents already produced or testimony already in the record; or (3) the requested discovery simply does not exist" (Dkt. #67 at pp. 2–3). Schlumberger then offers specific objections to each of Sullivan's discovery requests.

The Court will first address Sullivan's interrogatories. Then, the Court will address Sullivan's requests for production—first, as the requests relate to Elwood, and then as the requests relate to Schlumberger.

**I.     Interrogatories**

Sullivan's interrogatories only seek information from Schlumberger. As noted above, Sullivan seeks both: (1) the identity of the employees who worked at the Denton facility during Sullivan's employment at the facility; and (2) the net worth of STC. Schlumberger objects to the requested disclosures. The Court will address each interrogatory in turn.

Federal Rule of Civil Procedure 33 governs interrogatories. Rule 33 "provides that a party may serve upon any other party written interrogatories in order to discovery any information relevant under Rule 26(b)(1)." *Krawczyk v. City of Dallas*, No. Civ.A. 3:03-CV-0584D, 2004 WL 614842, *2 (N.D. Tex. Feb. 27, 2004) (citing FED. R. CIV. P. 33(a) & (c)). However, such broad allowance is limited by the language in Rule 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

FED. R. CIV. P. 26(b)(1).

Thus, "[a] party may object to an interrogatory if it is vague, ambiguous, or over broad." *Id.* (citing *Smith v. Sears Roebuck and Co.*, No. Civ.A. 3:01-CV-675-LN, 2002 WL 31203416, at *1 (S.D. Miss. Sept. 24, 2002)). "In a nonconclusory fashion, [the party resisting discovery] must show specifically how each document request is overly broad, burdensome, or oppressive." *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

5

### a. Identify of Employees at Denton Facility

According to Sullivan, "Schlumberger says that it terminated Mr. Sullivan because of performance issues[,]" and "[o]ther workers in [the Bay 1 area, the subassembly area, and areas just outside of the facility] would have knowledge of Mr. Sullivan's performance, as well as the way Mr. Sullivan was treat[ed] at the facility" (Dkt. #50 at pp. 7–8). Although Sullivan acknowledges that "[t]he identity of the persons in the area in which he worked would be a sufficient response[,]" he points to Schlumberger's response to Interrogatory Number 2 to support the contention that "Schlumberger cannot identify limited groups of workers in a particular area" (Dkt. #50 at p. 8).[1]

Schlumberger asserts that Sullivan's "request is overbroad, unduly burdensome, and not proportional to the need of the case because [Sullivan] seeks personal information of all employees at the Denton facility, which would have been over 400, most of whom did not work directly with [Sullivan]" (Dkt. #67 at p. 4). Further, Schlumberger argues that "many of the employees who worked at the Denton facility when [Sullivan] was assigned there have since been laid off, and STC no longer has current contact information for them" (Dkt. #67 at p. 4).

The Court agrees that the request is overbroad, unduly burdensome, and not proportional to the needs of the case. Although Sullivan asserts that "the number of workers at the Denton facility fluctuated between 70 and 120[,]" Schlumberger points to the testimony of STC's corporate representative to contradict that range. STC's corporate representative testified that over 400 employees existed in the Denton facility during the relevant time period (see Dkt. #67, Exhibit

---

[1] Schlumberger Limited's response to Interrogatory Number 2 stated that "[a]t all times relevant to this Lawsuit, Schlumberger Limited did not have any employees at the STC Denton, Texas facility, including the Bay 1 area in the TLM department" (Dkt. #50 at p. 14). STC's response to Interrogatory Number 2 stated that "STC is unable to identify all persons assigned to the Bay 1 area in the TLM Department of the Denton facility from November 1, 2017, to October 1, 2018" (Dkt. #50, Exhibit 1 at p. 57).

3 at p. 5). Regardless of whether 70 or 400 employees worked in the facility, no dispute appears to exist that most employees did not work with Sullivan. As such, Schlumberger would be required to produce personal information for many employees that "have since been laid off," despite "STC no longer [having] contact information for them[,]" and even though many of the employees have little to no relevant information to offer regarding Sullivan's performance or treatment (Dkt. #67 at p. 4).

While Schlumberger may have access to the relevant information, and resources which make finding such information possible, the Court is not persuaded that the requested information of all employees is important in resolving the issues of this case. Sullivan does not only seek the name and contact information of the employees; rather, Sullivan seeks the name, race, position, dates of employment, and dates assigned to the Schlumberger facility (*see* Dkt. #50, Exhibit 1 at p. 56). Much of the information sought does not relate to Sullivan's treatment and performance— for instance, an employee's race and position have no relevance on whether that employee witnessed discrimination and retaliation against Sullivan.

The Court is also persuaded that the burden of compiling such a list outweighs any benefit Sullivan may receive from gathering the information because any perceived benefit is merely hypothetical. What is not hypothetical, however, is that most of the employees included on the list undoubtedly have no information about Sullivan and likely had no interactions with him during his time at Schlumberger. Absent some limitation on the number of employees sought to be included, as well as a limitation on the information sought regarding the employees, the Court finds the requested discovery impermissibly broad, unduly burdensome, and not proportional to the needs of the case. Although the Court finds the interrogatory overbroad, Sullivan is not

precluded from seeking discovery regarding a limited subset of workers present at the facility during the relevant timeframe, assuming a subset can be identified.

### b. Net Worth of STC

Sullivan also seeks "[STC's] net worth" (Dkt. #50, Exhibit 1 at p. 59). Sullivan argues such information was disclosed in a previous case involving Schlumberger, *Hernandez v. Rush Enters., Inc.*, No. 4:19-CV-638, thus making it relevant and discoverable in the present action.

Schlumberger disagrees that net worth is discoverable for four reasons: (1) "the fact net worth discovery was compelled in one case does not entitle [Sullivan] to that discovery in a completely different case[;]" (2) Sullivan "fails to realize that he already has the discovery he seeks[;]" (3) "this case is not about exemplary damages, and thus the request is irrelevant to the needs of the case[;]" and (4) "there is no dispute that STC has sufficient assets to satisfy a potential judgment in this case" (Dkt. #67 at p. 5).

Sullivan is not entitled to STC's net worth merely because such information was compelled in a previous case. However, "[c]ourts have consistently found that evidence of a defendant's financial worth is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003) (first citing *United States v. Big D Enters.*, 184 F.3d 924, 932 (8th Cir. 1999); and then citing *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990)). Although Schlumberger contends that "this case is not about exemplary damages[,]" Sullivan's Amended Complaint states otherwise:

> Mr. Sullivan is also entitled to punitive damages because Schlumberger and Elwood Staffing engaged in a discriminatory or retaliatory practice or in discriminatory or retaliatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual under Section 1981

(Dkt. #11 at p. 16). Thus, because punitive damages are sought, STC's net worth is relevant to the present action. Further, the Court finds Sullivan entitled to STC's most recent calculation of net worth—not the net worth of the company in 2018. Such information would not be cumulative or duplicative, even if the numbers are ultimately the same. An updated net worth will help Sullivan calculate his exemplary damages claim, and Schlumberger must therefore provide such information.

## II. Requests for Production

Unlike Sullivan's interrogatories, the requests for production involve both Elwood and Schlumberger. Thus, the Court will address the defendants, and the corresponding requests for production, separately.

### a. Elwood

Sullivan "seeks to compel Elwood's responses to Requests for Production No. 4 and No. 52, both of which seek documents regarding Jamie Ferriman" (Dkt. #66 at p. 1). According to Sullivan, "Elwood says it produced its personnel file for Ms. Ferriman . . . [h]owever, it did not disclose attendance records for Ms. Ferriman[,] and [Elwood] claim[s] that attendance records are not a part of the personnel file" (Dkt. #50 at p. 17). Sullivan further claims that "[a]ttendance records can reasonably be included in a request for a personnel file even though the records may be kept separately" (Dkt. #50 at p. 17).

Elwood responds that it "is not withholding any personnel-related documents for Ferriman" (Dkt. #66 at p. 1). In fact, Elwood asserts that it "produced the entirety of its personnel records for Ferriman on June 28, 2021[,]" and "Elwood has no attendance records for Ferriman, just as it had no attendance records for [Sullivan]" (Dkt. #66 at pp 1–2).

As an initial matter, "the Court cannot compel documents that do not exist." *Levelland/Hockley Cnty. Ethanol, LLC v. Layne Christensen Co.*, No. 5-08-CV-112-C, 2009 WL 10678213, at *6 (N.D. Tex. June 11, 2009). However, while Elwood's supplemental response to Sullivan's Request for Production No. 2 states that Elwood "has already produced responsive documents, including Elwood.000329-424[,]" such response does not indicate that no further documents exist (Dkt. #50, Exhibit 1 at p. 88). The Court therefore orders Elwood to again supplement is response to Request for Production No. 2 to clarify that there are no documents remaining that are responsive to this request. *See Dortch v. Wells Fargo Bank*, No. , 2020 WL 1289431, at *8 (E.D. Tex. Mar. 18, 2020) (ordering defendant to supplement its response to clarify whether additional documents exist when disagreement arose in a motion to compel documents).

### b. Schlumberger

Sullivan seeks four categories of documents from Schlumberger: (1) documents related to integrated enterprise issues; (2) documents related to human resource training materials; (3) Ferriman's personnel file; and (4) Risk Identification Reports. Schlumberger objects to the production of all documents requested.

#### i. Documents Related to Integrated Enterprise Issues

Schlumberger objects to the production of documents related to integrated enterprise issues on the basis that Sullivan "seeks information that does not exist[,]" and "[t]here is nothing else responsive to these requests" (Dkt. #67 at p. 6). Sullivan responds that he "is willing to limit the requests further . . . and based upon the relevancy and the limitations, the objections should be [overruled] and production ordered" (Dkt. #50 at p. 13).

The Court finds that production of some, though not all, of Sullivan's requested information is appropriate. Although Schlumberger contends that its summary judgment evidence

shows the extent of the relationship between Schlumberger Limited and STC, the limitations provided for by Sullivan vastly decrease any burden that previously existed on Schlumberger. The Court has yet to rule on the merits of Schlumberger's summary judgment motion, and thus no decision on the integrated enterprise theory has been issued. As such, documents pertaining to such a theory remain relevant to Sullivan's claim.

Requiring production of principal operating agreements, organizational charts showing the chain of command between Schlumberger Limited and STC, and documents showing the names of common officers or directors of the two entities is not overly broad or unduly burdensome. The documents either exist or do not exist, and Schlumberger has not indicated such documents would be difficult or cumbersome to locate. The information sought goes directly to Sullivan's integrated enterprise theory, and the documents certainly come within Rule 26's purview. Accordingly, the Court finds production of any principal operating agreements, organizational charts showing the chain of command between Schlumberger Limited and STC, and documents showing the names of common officers or directors of the two entities appropriate.

The Court reaches a different conclusion regarding board minutes of STC and emails between STC and officers of Schlumberger Limited. Although such documents might yield some information of value, the Court agrees with Schlumberger that board meeting minutes and emails between officers contain "highly confidential and sensitive corporate information totally unrelated to the issues of this case" (Dkt. #67 at p. 6). The Court has already determined that various documents, which would tend to show interrelatedness, must be produced. Thus, the relevancy of board meeting minutes and emails between officers is significantly lessened. That lessening of relevancy is fatal to Sullivan's request—with alternative ways to confirm an integrated enterprise does, or does not, exist, the Court sees no persuasive reason to require Schlumberger to search

11

through board meeting minutes and emails between officers, redact confidential and sensitive information, and produce what is remaining to Sullivan.

If Schlumberger does not possess principal operating agreements, organizational charts showing the chain of command between Schlumberger Limited and STC, or documents showing the names of common officers or directors of the two entities, Schlumberger should supplement its responses indicating such.

### ii. Documents Related to Human Resource Training Materials

Sullivan also seeks "the 'Allegation Statistics' that [Schlumberger] provides in its discrimination training" (Dkt. #50 at p. 15). Sullivan does not, however, indicate the relevance of these statistics beyond the general proposition that "[t]he training of human resource personnel and supervisors to recognize and prevent discrimination and retaliation in the workplace is relevant to the core issues of the case" (Dkt. #50 at p. 15).

According to Schlumberger, "STC has produced the documents in its possession, custody, and control that are used as training materials for STC human resources managers and other representatives[,]" and "[v]ersions of these produced documents would have been used for human resources training at the time of [Sullivan's] temporary work assignment" (Dkt. #67 at pp. 6–7).

The specific statistics at issue, of which Sullivan seeks disclosure, were "part of new training that was rolled out in 2019 and provided to HR and Management in 2020" (Dkt. #67 at p. 7). The undisputed facts establish that Sullivan was assigned to STC in 2017 and was removed from STC ten months later, in late 2018 (*see* Dkt. #11 at p. 4; Dkt. #14 at p. 3; Dkt. #22 at p. 3; Dkt. #23 at p. 3). Thus, the relevant time period for this action—when the discrimination and retaliation purportedly occurred—predated the introduction of Allegation Statistics. As such, the relevant human resource manuals and training information would be those documents in effect in

2017 and 2018, or later versions of the same information. The statistics sought by Sullivan had no impact on the human resource training or actions of the human resources department during the pendency of Sullivan's assignment at STC because they did not even exist until, at the earliest, 2019. The statistics are therefore irrelevant to any claims or defenses in the present action and requiring the production of such is inappropriate.

### iii. Ferriman's Personnel File

Sullivan also seeks the personnel file of his closest comparator. Sullivan claims the closest comparator to his situation was Ferriman because "[j]ust like Mr. Sullivan, she was initially hired by Elwood for Schlumberger as a material handler and then became a named employee of Schlumberger" (Dkt. #50 at pp. 15–16).

Schlumberger responds that "Ferriman is not [Sullivan's] comparator for the purposes of establishing a *prima facie* case of employment discrimination" (Dkt. #67 at p. 7). Further, Schlumberger asserts that Sullivan's "request for her personnel file is duplicative and cumulative of the adequate evidence already in the record concerning Ms. Ferriman[,]" and "more importantly, Ms. Ferriman's personnel file is irrelevant to the claims at issue because she is not [Sullivan's] comparator" (Dkt. #67 at p. 8).

Whether Ferriman is a proper comparator for Sullivan remains disputed and unresolved. Although Schlumberger points to evidence attached to its summary judgment motion, the Court has not yet ruled upon the motion or arguments made therein. Until the Court decides whether Ferriman is Sullivan's comparator, that issue remains relevant. The personnel file of Ferriman likewise remains relevant.

Although Sullivan has deposed Ferriman, as well as "other corporate and fact witnesses" who have allegedly "testified as to her work history, medical issues, and employment status that

led to the alleged differential working conditions between her and Plaintiff[,]" (Dkt. #67 at p. 8), Sullivan is still entitled to view Ferriman's file. "A court may order production of personnel files of a discrimination plaintiff's comparators if the information contained therein may be relevant to show that a defendant's reasons for terminating a plaintiff were pretextual." *Martin v. Allstate Ins. Co.*, 292 F.R.D. 361, 365 (N.D. Tex. 2013) (citing *Jepsen v. Florida Bd. of Regents*, 610 F.2d 1379, 1384–85 (5th Cir. 1980)). The documents contained within Ferriman's personnel file may confirm the testimony of the witnesses; however, it may also contradict such testimony. The documents were, presumably, prepared in conjunction with the relevant events occurring. The close proximity in time to the decision-making process that purportedly resulted in the discrimination and retaliation against Sullivan supports finding the file subject to production, despite the already-existing information contained in the record on Ferriman.

In accordance with the foregoing, the Court finds Schlumberger must provide Ferriman's personnel file to Sullivan. However, such personnel file need only include the information sought by Sullivan: (1) any attendance records; (2) any requests for time off; (3) any requests for accommodations and any accommodations subsequently given; (4) any documents showing permission for time off; (5) any performance reviews, (6) any documents relating to compensation, and (7) any documents relating to Ferriman's qualifications, and (8) any hiring records.

### iv. Risk Identification Reports

Sullivan lastly requests "a copy of all Risk Identification Reports ("RIR") in the Schlumberger Denton facility referencing mobile phone use on a forklift for the past 10 years" (Dkt. #50 at p. 19). According to Sullivan, such information is relevant "to see if names were identified and whether the person was terminated" following mobile phone use on a forklift (Dkt.

#50 at p. 19). Put more simply, Sullivan contends "[t]hese facts are relevant to showing that the reason given for Mr. Sullivan's termination is pretext" (Dkt. #50 at p. 19).

Schlumberger responds that Sullivan's "request for 10 years' worth of RIRs is irrelevant and not proportional to the needs of the case" (Dkt. #67 at p. 9). Further, Schlumberger asserts that "[a]ll the RIRs produced to [Sullivan], including the specific one that [Sullivan] alleges refers to him, are anonymous[,]" and "anonymous RIRs involving incidents of use of a cellphone while operating a forklift preceding [Sullivan's] work assignment are simply not relevant" (Dkt. #67 at p. 9).

Schlumberger has purportedly disclosed five RIRs regarding cell phone usage on forklifts during the pendency of Sullivan's assignment at the STC Denton facility. Notably, the RIRs are anonymous and, as such, Sullivan cannot reasonably track the disciplinary actions taken following the issuance of a particular RIR. Thus, requiring Schlumberger to comb through 10 years of anonymous records—of which Schlumberger must then differentiate between those created due to cell phone usage on forklifts and those created for other reasons—only to prove number alone is not proportional to the needs of the case. Nor are 10 years of anonymous records relevant—the five RIRs produced are sufficiently representative of the number of complaints garnered prior to Sullivan's assignment at the Denton facility. Due to the disproportionate and irrelevant nature of the request, the Court does not find compelling production of "all [RIRs] in the Schlumberger Denton facility referencing mobile phone use on a forklift for the past 10 years" appropriate.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Compel Written Discovery (Dkt. #50) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that Elwood must respond to Sullivan's Request for Production Number 4 within seven (7) days of issuance of this Order.

It is further **ORDERED** that Schlumberger Limited must respond to Sullivan's Request for Production Numbers 1, 2, 3, 5, 6, 7, and 8, as limited herein, within seven (7) days of issuance of this Order.

It is further **ORDERED** that STC must respond to Sullivan's Interrogatory Number 8 and Sullivan's Request for Production Number 52 within seven (7) days of issuance of this Order.

**IT IS SO ORDERED**.

**SIGNED this 29th day of July, 2021.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE