# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| DEMARCUS SULLIVAN, § <br> § <br> *Plaintiff*, § <br> § <br> § <br> v. § <br> § <br> § <br> SCHLUMBERGER LIMITED, § <br> SCHLUMBERGER TECHNOLOGY § <br> CORPORATION, AND ELWOOD § <br> STAFFING SERVICES, INC., § <br> § <br> *Defendants*. | Civil Action No.  4:20-CV-00662 <br> Judge Mazzant |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Schlumberger Limited's Motion for Summary Judgment (Dkt. #58). Having considered the pleadings and the relevant arguments, the Court finds the motion should be **GRANTED**.

## BACKGROUND

This case arises out of an employer-employee relationship whereby Plaintiff DeMarcus Sullivan ("Sullivan") alleges claims of disparate treatment, interference, and a hostile work environment under the Civil Rights Act of 1866, 42 U.S.C. § 1981. Elwood Staffing Services, Inc. ("Elwood") is a temporary staffing agency. In October 2017, Elwood assigned Sullivan to work temporarily as a materials handler at Schlumberger Technology Corporation's ("STC") maintenance facility in Denton, Texas. Schlumberger Limited ("Limited") is a corporate parent of STC but maintained no operations at STC's Denton facility. Throughout Sullivan's assignment at STC, he remained an employee of Elwood.

Sullivan worked at STC for approximately ten months. During those months, Sullivan alleges he was subject to racial harassment and discrimination by STC employees. Sullivan

allegedly reported the harassment and discrimination to both Schlumberger's Human Resources Department and his supervisors, but he never received a report of an investigation by the department. In September of 2018, STC informed Elwood that it had released Sullivan from the job assignment due to issues with Sullivan's job performance. According to Sullivan, STC released him because he reported concerns about racial discrimination.

On July 15, 2021, Limited filed this motion for summary judgment, asserting that liability cannot be imputed to Limited through STC because Limited and STC are not single enterprises (Dkt. #58). Sullivan responded on September 21, 2021 (Dkt. #96). On September 27, 2021, Limited filed its reply (Dkt. #104). On September 30, 2021, Sullivan filed its sur-reply (Dkt. #108).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of

material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANAYLSIS

Limited asserts it is not liable for the alleged discriminatory acts of its subsidiary, STC, and accordingly, Limited is entitled to summary judgment. Sullivan responds that Limited and STC are an "integrated enterprise," and therefore, Sullivan may impute liability to Limited—especially given the discrimination context of this case.

"The doctrine of limited liability creates a strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Tipton v. Northrup Grumman Corp.*, 242 F. App'x 187, 189–90 (5th Cir. 2007) (citing *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 778 (5th Cir. 1997)). However, "[i]n civil rights actions, 'superficially distinct enterprises may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer.'" *Schweitzer v. Advanced Telemarketing Corp.*, 104 F.3d 761, 763 (5th Cir. 1997) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983)). This circuit applies a four-factor single enterprise test to determine whether two entities served as a single employer in both Title VII and § 1981 cases. *See Trevino*, 701 F.2d 397; *Johnson v. Crown Enter., Inc.*, 398 F.3d 339, 343 (5th Cir. 2005).

The four factors are "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Trevino*, 701 F.2d at 404. "The second factor has been refined into an inquiry" to determine which "entity made the final decisions regarding employment matters related to the person claiming discrimination." *Johnson*, 398 F.3d at 343 (quoting *Trevino*, 701 F.2d at 404). "This factor, furthermore, has been called the most important one." *Id.* (citing *Schweitzer*, 104 F.3d at 764). *But see Carpenters Loc. Union No. 1846 of United Brotherhood of Carpenters v. Pratt–Farnsworth, Inc.*, 690 F.2d 489, 505 (5th Cir.1982) ("[N]o one of the factors is controlling . . . nor need all criteria be present.") (internal citation omitted). "This analysis ultimately focuses on . . . whether the parent corporation was a final decision-maker in connection with the employment matters underlying the litigation." *Lusk*, 129 F.3d at 777 (citing *Chaiffetz v. Robertson Rsch. Holding, Ltd.*, 798 F.2d 731, 735 (5th Cir. 1986). The Court will discuss each factor in turn.

I.       **Interrelation of Operations**

"The interrelation of operations element of the single employer test ultimately focuses on whether the parent corporation excessively influenced or interfered with the business operations of its subsidiary." *Id.* at 778. The plaintiff must provide evidence that would establish "the parent actually exercised a degree of control beyond that found in the typical parent-subsidiary relationship." *Id.* Limited argues Sullivan has presented evidence that at best establishes only a typical parent-subsidiary relationship—specifically that Limited and STC share a website, e-mail address, and corporate address (Dkt. #58 at p. 6).

Sullivan responds that Limited and STC do not have a formal operating agreement between them, which a jury could consider "an indication that the companies operate as one" (Dkt. #98 at p. 10). Sullivan also points to the ways in which "[t]he two companies present themselves to the public as a single integrated enterprise"—that is, they use the same website and email domain and share the same name, Schlumberger (Dkt. #98 at pp. 10–11). Further, Sullivan highlights that one of Schlumberger's divisions is called "Digital & Integration," which features "integrated control and safety systems," delivers "integrated projects," uses an "integrated business model," and combines "digital technologies within an integrated environment" to increase production. (Dkt. #98 at p. 11).

The Court finds Sullivan's evidence falls short of establishing a genuine dispute as to whether Limited exercised a degree of control of STC that goes beyond the control in the typical parent-subsidiary relationship. First, the absence of evidence is insufficient for Sullivan to overcome the "strong presumption that a parent corporation is not the employer of its subsidiary's employees." *Tipton*, 242 F. App'x at 189–90; *see Johnson*, 398 F.3d at 343–44 (evidence of interrelation of operations and common ownership are not enough to overcome lack of evidence

regarding labor decisions). Further, a shared email address, domain name, website, and company name are insufficient to show Limited exercised any degree of control over STC. *See Lusk*, 129 F.3d at 779–80. Lastly, that Limited uses the word "integration" on its website or in any company documents or policies is irrelevant. The uses of this word that Sullivan cites relate in no way to the structural relationship between Limited and its subsidiaries. Rather, it relates to the substance of Schlumberger's entire business—a global force in the energy technology field.

Sullivan has not made any showing of evidence that would be considered relevant under this fact, such as (1) Limited's direct involvement in STC's "daily decisions relating to production, distribution, marketing, and advertising; (2) shared employees, services, records, and equipment" between Limited and STC; "(3) commingled bank accounts, accounts receivable, inventories, and credit lines;" (4) maintenance of LTC's books; (5) issuance of LTC's paychecks; or (6) preparation and filing of STC's tax returns. *Lusk*, 129 F.3d 778 (citing *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1241 (2d Cir. 1995); *Johnson v. Flowers Indus., Inc.*, 814 F.2d 978, 981 (4th Cir. 1987); *Greason v. Southeastern R.R. Assoc. Bureaus*, 650 F. Supp. 1, 4 (N.D. Ga. 1986), *aff'd*, 813 F.2d 410 (11th Cir. 1987); *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726–27 (N.D. Ala.), *aff'd*, 664 F.2d 295 (11th Cir. 1981)). Accordingly, Sullivan has not met his burden of producing evidence that would show Limited excessively influenced or interfered with the business operations of STC.

### II. Centralized Control of Labor Relations

As mentioned, this factor "has been called the most important one." *Johnson*, 398 F.3d at 343. It "has been refined into an inquiry" to determine which "entity made the final decisions regarding employment matters related to the person claiming discrimination." *Id.* Sullivan recites a long chain of events in an attempt to show Limited's direct involvement with Sullivan's employment at STC (Dkt. #96 at pp. 23–25). The events amount to emails between various

employees, the substance of which Sullivan does not include. Without any substance, "[n]othing from these emails allows for a reasonable inference to be drawn that Limited employees were involved in the decision to release Plaintiff back to his employer" (Dkt. #104 at p. 5).

By contrast, in *Trevino*, the Fifth Circuit reversed the district court's grant of summary judgment in part because there were, in that case, "over a hundred documents, signed by the parent's managers, authorizing lay-offs, recalls, promotions, and transfers of the subsidiary's employees," which strongly suggested the parent company held centralized control of the labor relations. *Id.* at 781 (5th Cir. 1997) (citing *Trevino*, 701 F.2d at 400). Sullivan presents no facts that rise to the level of control between the companies in *Trevino*. To be sure, Sullivan submits that Limited maintains centralized control over STC's labor relations because Schlumberger uses a talent management vendor called "SAP" to assist it in running "an intelligent enterprise," and businesses use this type of vendor for enterprise integration (Dkt. #96 at p. 11). Further, Sullivan contends that Limited and STC are "known internally as one company" (Dkt. #96 at p. 12) and operate under a unified management structure (Dkt. #96 at p. 14).

First, the Court is unpersuaded by the relevance Sullivan attempts to place on Schlumberger's use of SAP. The Court agrees with Limited that, "share[d] software platforms [are]—at most—a typical feature of a parent-subsidiary relationship" (Dkt. #104 at p. 3). Second, Sullivan again resorts to the absence of evidence to support its conclusion regarding Schlumberger's unified management structure. Sullivan cites to the deposition testimony of two Schlumberger employees and asserts that their misunderstanding as to "which Schlumberger" they work for suggests that STC and Limited are a single enterprise—or at least presents an issue of fact for the jury (Dkt. #96 at p. 13).

7

At best, Sullivan has shown that some STC employees fall under the corporate umbrella of Limited employees. But this ignores the "well established principle that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *Lusk*, 129 F.3d at 779 (citing *United States v. Jon–T–Chem., Inc.*, 768 F.2d 686, 691 (5th Cir. 1985), *cert. denied*, 475 U.S. 1014 (1986). Thus, to show centralized control of labor relations, Sullivan "must point to evidence that" Limited employees acted as "final decision-maker[s] in connection with" STC's decision not to renew Sullivan's temporary work order. *Id.* at 777. Further, Limited employees in this connection must have "act[ed] in their official capacities as officers of" STC when they made such decisions. *Id.* at 777. Sullivan presents no evidence on any of these points.

**III.      Common Management**

Limited argues it "does not direct or supervise STC's employees and contract workers, including" those "who worked at the Denton facility" (Dkt. #58 at p. 7). For this, Limited asserts it "in no way manages STC's business" (Dkt. #58 at p. 7). Sullivan responds with arguments similar to those it asserted to show central control of labor relations—that Limited's representatives do not understand Schlumberger's corporate structure. Sullivan then spills much ink claiming that the representatives' lack of knowledge "is tantamount to a failure to appear" and asks that the Court preclude Limited "from offering any testimony at trial on the subjects, which its designee was unable or unwilling to testify about at the 30(b)(6) deposition" (Dkt. #96 at p. 21). The Court does not see how this relates to the present motion. If Sullivan wished to compel discovery from any of the Defendants, he could have filed a proper motion. The Court agrees with Limited that, "[e]ven if [Sullivan's] objections and accusations had some credence, which they do not, [his] claims still fail as a matter of law" (Dkt. #104 at p. 10) because Sullivan has not shown

Limited employees acted as "final decision-maker[s] in connection with" STC's decision not to renew Sullivan's temporary work order. *Lusk*, 129 F.3d at 777. At this stage in litigation, Sullivan cannot point to nothing and hope that it could, abstractly, mean something to a jury. The summary judgment burden is higher.

### IV.     Common Ownership or Financial Control

It is undisputed that Limited and STC have common ownership. But even Sullivan concedes "[c]ommon management and ownership are ordinary aspects of a parent-subsidiary relationship" (Dkt. #96 at p. 22); *see Lusk*, 129 F.3d at 778 ("[T]he mere existence of common management and ownership are not sufficient to justify treating a parent corporation and its subsidiary as a single employer.").

As to financial affairs, Limited states it "does not finance STC's business enterprise, nor does it pay STC's salaries or expenses" (Dkt. #58 at p. 8). Further, Limited posits that the two companies "maintain separate bank accounts, books, accounting records, payroll accounts, and tax identification numbers" (Dkt. #58 at p. 8). Sullivan responds that Limited and STC "file consolidated financial statements with the SEC" (Dkt. #96 at p. 23). Sullivan also points to Schlumberger's "represent[ation] that it follows 'integrated framework' criteria for internal control over finances," particularly through the SAP technology (Dkt. #96 at p. 23).

The Court finds this factor points slightly in favor of Sullivan—but that the evidence is still insufficient to present a genuine issue of material fact. Indeed, even if Limited maintained total financial control over STC (which the evidence does not support), there is still no evidence suggesting Limited "was a final decision-maker in connection with the employment matters underlying the litigation." *Lusk*, 129 F.3d at 777. To be sure, a jury could hear evidence regarding a genuine dispute as to financial control. But these facts are not material to the inquiry when there

9

are no genuine disputes that Limited employees acted as final decision-makers in connection with STC's decision not to renew Sullivan's temporary work order. Without evidence to support the cornerstone of the integrated enterprise analysis, Sullivan cannot, as a matter of law, impute liability from STC to Limited.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant has carried its summary judgment burden, and Plaintiff has failed to set forth particular facts indicating there is a genuine issue for trial regarding the corporate relationship between Limited and STC.

It is therefore **ORDERED** that Defendant Schlumberger Limited's Motion for Summary Judgment (Dkt. #58) is **GRANTED**.

It is further **ORDERED** that Plaintiff DeMarcus Sullivan's claims against Defendant Schlumberger Limited are hereby **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

SIGNED this 25th day of February, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE